Filed 5/24/13  P. v. Wiley CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B233989 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA110193) |
| v. | |
| AARON G. WILEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip H. Hickok, Judge.  Affirmed.

Tara K. Hoveland, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

Aaron G. Wiley challenges the sufficiency of the evidence identifying him as the perpetrator of an assault with a deadly weapon against victim Carlos O.[1] We conclude there is substantial evidence to support the jury verdict and affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL SUMMARY

At 9:00 p.m. on the night of February 13, 2009, Carlos O. was standing on the sidewalk near his home talking with his girlfriend, Myra Stephanie Hernandez. A light-colored, older, two-door Cadillac drove up. A passenger got out of the car and started shooting at him. He fired six or seven times. Carlos O. ran, fell, and was shot in the foot. He was hospitalized overnight, and was required to wear a cast for three or four weeks. He had a bullet fragment in his foot and a scar.

In an amended information, appellant was charged with assault with a firearm in violation of Penal Code section 245, subdivision (a)(2). It was alleged that he personally used a firearm in connection with the assault on Carlos O. The jury deadlocked on the assault against Carlos, and the court declared a mistrial as to that count. It was retried. The jury convicted appellant and found true the allegation that he personally used a handgun in the commission of the crime. The jury found not true the allegation that appellant personally inflicted great bodily injury. Appellant was sentenced to a term of seven years for the assault on Carlos O. (three-year middle term plus four years on the gun use enhancement). Appellant filed a timely appeal.

---

[1] Carlos O. was a minor at the time of the commission of the offense, and we protect his identity accordingly. Appellant does not challenge his convictions in the first trial for assault with a deadly weapon and second degree robbery of victim Joel Gomez, arising from a separate incident. We omit any factual or procedural history regarding those charges.

## DISCUSSION

### I

Appellant challenges the sufficiency of the evidence that he was the perpetrator of the assault with a deadly weapon against Carlos O. "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639.) "'[T]o entitle a reviewing court to set aside a jury's finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all.' [Citations.]" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.)

Carlos O. testified that he saw the shooter for about three seconds before the first shot was fired. He described the shooter to a sheriff's deputy as a male, black, 18 to 25 years old, 5' 6" tall, 170 pounds, wearing a black beanie, black shirt and blue jeans. He did not identify appellant as the shooter from a photographic lineup shown to him a few days after the shooting. He explained at trial that he was 16 years old at the time of the shooting, was unsure which photo was of the shooter, and was afraid to identify the shooter. He also failed to identify appellant at a live lineup held in November 2009 because he did not recognize him as the shooter. He explained that he was afraid to identify the shooter at that time as well. Carlos O. did identify appellant as the shooter at the preliminary hearing in November 2009. He was 80 to 90 percent sure of this identification. He did not testify at the first trial because he was afraid of retaliation. At the second trial, he identified appellant as the shooter. He testified that the shooter was 5' 6" tall, skinny (150-160 pounds), with curly hair and wearing black clothes, including a black sweater.

3

Laura Gutierrez was in her truck nearby when Carlos O. was shot. She saw the shooter walking toward him and shooting. Although she was afraid, she got out of her truck and yelled at the shooter, who was about 12 feet away from her. She estimated that she saw the shooter's face for less than a second. At the second trial, Ms. Gutierrez identified appellant as the shooter. She was uncomfortable about testifying because she has children and did not want to be involved. She had not met appellant before the shooting. She said that a street light and lights on one of the buildings provided enough light for her to see the shooter's face. A month after the shooting, Ms. Gutierrez identified appellant as the shooter from 30 to 35 pages of photographic lineups. On November 18, 2009, she went to a live lineup. She identified appellant as the shooter. She also identified him as the shooter at the preliminary hearing.

At the second trial, Ms. Gutierrez testified that the shooter came out of the rear passenger side of the Cadillac, but previously she had testified that he got out on the driver's side. She said that Carlos O. and his girlfriend, Ms. Hernandez, were together, attempting to hide from the shooter. That account conflicted with Carlos's testimony that Ms. Hernandez stayed where she was while he ran away from the shooter. Ms. Gutierrez was shown defense exhibits A and B which depicted an unidentified man. She said that it was not the shooter because appellant was the shooter.[2]

Deputy Sheriff Robert Bankston responded to the shooting scene. He said the area was lit by an overhead light. Carlos O. told him that the shooter's car was a white, older model, two-door Cadillac. Carlos described the shooter as a male black, 18 to 25 years of age, wearing a black beanie, black T-shirt and blue jeans, 5' 6" foot tall, and 170 pounds. He said the shooter had exited from the passenger side of the Cadillac. Deputy Sheriff Phol Heang testified that he interviewed Ms. Gutierrez at the shooting scene. She told him that the shooter exited the rear left door of an older, white Cadillac.

---

[2] At a hearing pursuant to Evidence Code section 402, appellant's sister, Aarion Wiley, identified the man depicted in defense exhibits A and B as Paul Wingler, a former schoolmate whom she knew drove around Bellflower in an older-model, two-door white Cadillac. The trial court excluded her testimony and exhibits A and B.

Defense witnesses Kevin Hands and Frederick Knowles testified that they were with appellant at the home of appellant's family at the time of the shooting. The defense also called Dr. Robert Shomer, a psychologist who testified as an expert on eyewitness identification. He stated that the accuracy of an eyewitness identification is adversely impacted by stress, the suddenness and violence of the incident, low lighting, and a short duration of observation. A witness' identification of a stranger or a member of a different race, circumstances present here, is less accurate. Dr. Shomer also described the precautions which should be taken in obtaining an identification from a photographic array. He explained that once a witness makes an identification, that impression cannot be erased and will result in future identifications of the same person.

Issues affecting witness credibility are for the jury to resolve. (*People v. Elliott* (2012) 53 Cal.4th 535, 586.) In *Elliott*, the defendant argued that testimony identifying him as the perpetrator of an uncharged robbery should have been excluded because the victim saw the gunman for only a few seconds, initially described the gunman as having a mole on his lip, and had been influenced by having seen a composite drawing of the perpetrator in the newspaper. The Supreme Court held that the testimony was neither physically impossible nor inherently improbable and provided substantial evidence that the defendant was the perpetrator. (*Ibid.*)

In *People v. Mohamed, supra,* 201 Cal.App.4th 515, 522, the Court of Appeal held the fact that a witness was not positive in identifying the defendant as the perpetrator goes only to the weight of the testimony; inconsistencies in the descriptions given by the witnesses did not require the jury to reject the witnesses' identifications: "'The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance . . . .' [Citation.]" (*Ibid.*) The court held that the jury was not obliged to accept the testimony of an expert witness regarding inaccuracies in eyewitness identification. (*Ibid.*) It

5

declined to find that the identifications of the defendant by the witnesses were inherently improbable because the defendant's physical appearance on the night of the robbery was a close match to the witnesses descriptions, he was found near the crime scene with a do-rag similar to the masks worn by the robbers, and he gave a false alibi.  (*Id*. at pp. 522–523.)

In discussing an out-of-court identification, the Supreme Court in *People v. Boyer* (2006) 38 Cal.4th 412, noted that the defendant's counsel had a full opportunity to cross-examine the witness about the certainty of her photo identification and about all aspects of the identification process, which included occasions in which she identified others as the perpetrator.  (*Id*. at p. 481.)  The court concluded that under these circumstances, it was for the jury to evaluate the credibility of the witness' identification and the weight her testimony deserved.  (*Ibid.*)

Carlos O. and Ms. Gutierrez identified appellant as the shooter.  Carlos explained that he did not initially identify appellant as the shooter because he was afraid. Ms. Gutierrez was steadfast in her identification of appellant as the perpetrator. Appellant was given a full opportunity to point out inconsistencies in their descriptions of the perpetrator, circumstances which would reduce the reliability of their identifications, and the failure of Carlos to identify appellant as the shooter at earlier stages of these proceedings.  It was for the jury to determine whether to credit the testimony identifying appellant as the shooter.  It did so and found evidence beyond a reasonable doubt that appellant was the perpetrator.  The eyewitness testimony constitutes substantial evidence of guilt which is neither inherently impossible nor improbable.

## DISPOSITION

The judgment of conviction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                                EPSTEIN, P. J.

We concur:


WILLHITE, J.


SUZUKAWA, J.